IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND DIVISION

LARON MCCLOUD, on behalf of    §     CV NO. 7:14-CV-120
himself and all others similarly situated, §
                               §
        Plaintiff,                §
                               §
v.                                   §
                               §
MCCLINTON ENERGY GROUP,    §
L.L.C. and JAYCAR ENERGY       §
GROUP, L.L.C. d/b/a JAYCAR FRAC §
PLUGS,                          §
                               §
        Defendants.          §
_____ §

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR CONDITIONAL
CERTIFICATION AND NOTICE TO POTENTIAL CLASS MEMBERS

        Before the Court is a Motion for Conditional Class Certification and

Notice to Potential Class Members filed by Plaintiff Laron McCloud ("Plaintiff" or

"McCloud"), on behalf of himself and all others similarly situated.  ("Mot.," Dkt.

# 17.)  On February 18, 2015, the Court held a teleconference hearing on the

Motion.  Jeremi K. Young and Rachael Rustmann, Esqs., represented Plaintiff;

James H. Birch and Caleb D. Wood, Esqs., represented McClinton Energy Group,

LLC ("McClinton") and Jaycar Energy Group, LLC d/b/a Jaycar Frac Plugs

("Jaycar") (collectively, "Defendants").  After careful consideration of the

memoranda in support of and in opposition to the Motion, and in light of the

parties' arguments at the hearing, the Court, for the reasons that follow, **GRANTS IN PART** Plaintiff's Motion for Conditional Certification and Notice to Potential Class Members (Dkt. # 17).

<u>BACKGROUND</u>

The instant motion arises out of Plaintiff's employment from May 2012 to May 2014, when he worked for Defendants[1] as a plug technician[2] until he was promoted to shop foreman. ("McCloud Decl.," Mot., Ex. 1 ¶ 2.) As a plug technician, Plaintiff participated in inserting composite plugs in the well bore of oil and natural gas wells as part of the hydraulic fracturing ("fracking") process and monitoring wire line speed and pressures. (<u>Id.</u> ¶ 3.) Although he was usually dispatched out of Midland, Texas, he conducted the work directly at the job sites of Defendants' clients. (<u>Id.</u> ¶ 2.)

He alleges that Defendants paid plug technicians a fixed monthly salary, supplemented with a nondiscretionary day bonus. (<u>Id.</u> ¶ 4.) At the start of McCloud's tenure as a plug technician, his salary was $3,600 per month; although his salary was later reduced to $3,240 per month as part of a company-wide pay-cut for plug technicians, his salary had risen to $4,950 per month right before he received his promotion in 2014. (<u>Id.</u>) His nondiscretionary day bonuses ranged

---

[1] Jaycar is a subsidiary of McClinton Energy Group. (Dkt. # 11, Ex. 1 ¶ 3.)

[2] Plug technicians are also referred to as "plug hands." (Mot. at 1.)

from $45 to $120.  (Id.)  Plaintiff alleges that he was never paid overtime, even

though he routinely worked 16 to 20 hour days, six or seven days a week.  (Id. ¶ 5.)

Plaintiff further alleges that the primary job duties of all of

Defendants' plug technicians were the same and that they were all paid in the same

way, although not necessarily in the same amounts.  (Id. ¶ 6.)

On July 10, 2014, Plaintiff filed a complaint in this Court, naming

McClinton and Jaycar as Defendants.  ("Compl.," Dkt. # 1.)  He asserted a failure

to pay overtime claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§§ 201–219, on behalf of himself and all persons employed by Defendants as plug

technicians from July 1, 2011 to the present.  (Id. at 4–5.)  Plaintiff seeks unpaid

overtime wages as liquidated damages, as well as attorney's fees and costs.  (Id. at

5.)  Included in his complaint was a voluntary consent to join notice signed by

fellow plug technician Robert Rios ("Rios").  (Id., Ex. 3.)[3]

On August 21, 2014, plug technician Matthew Wilson ("Wilson")

filed a voluntary consent to join notice.  (Dkt. # 6, Ex. 1.)  On October 6, 2014,

Chad Manning ("Manning") opted in, and on October 31, 2014, Jerry Brewer

("Brewer") opted in.  (Dkt. # 12, Ex. 1; Dkt. # 15, Ex. 1.)

---

[3] Although Plaintiff's complaint does not contain allegations of retaliation, Jerry
Brewer attests that "[i]t is commonly known that McClinton fired Laron McCloud
soon after he filed the lawsuit."  ("Brewer Decl. 2," Dkt. 21, Ex. A-2 ¶ 11.)
Plaintiff has filed a separate suit alleging claims of retaliation under the FLSA.
See McCloud v. McClinton Energy Grp., L.L.C., No. 5:14-CV-1011-DAE.

On November 13, 2014, Plaintiff filed the instant Motion for

Conditional Certification and Notice to Potential Class Members.  (Dkt. # 17.)

Defendants filed their Response on November 24, 2014 ("Resp.," Dkt. # 21), and

Plaintiff filed his Reply[4] on December 4, 2014 ("Reply," Dkt. # 27).  On December

1, 2014, Plaintiff filed a request for a hearing, noting that the statute of limitations

continues to run for each potential class member until that individual files a written

consent opting to join the suit.  (Dkt. # 23.)

LEGAL STANDARD

An employee can bring an action for violating the minimum wage and

overtime provisions of the FLSA, either individually or as a collective action on

---

[4] As part of his Reply briefing, Plaintiff submitted second affidavits from Laron
McCloud and Jerry Brewer, as well as a job description for the plug technician
position and paychecks from three plug technicians.  (Reply, Exs. 1–3, 6–8.)  At
oral argument, Defendants urged the Court to use its discretion to strike these
exhibits, citing Weber v. Merrill Lynch Pierce Fenner & Smith, Inc., 455 F. Supp.
2d 545, 551 (N.D. Tex. 2006) (finding that the plaintiffs "used their reply brief to
supplement their motion and add a new basis" to support granting the motion and,
therefore, striking the new argument and supporting evidence) and Eagle TX I SPE
LLC v. Sharif & Munir Enters., Inc., 2014 WL 696523, at *1 n.1 (N.D. Tex. Feb.
24, 2014) (declining to consider an affidavit attached to defendants' reply because
it contained new arguments and because the court has discretion not to consider
new arguments/evidence raised in reply briefs).
    Although Defendants are correct that the Court has the discretion not
to consider new arguments and evidence raised in reply briefings, a district court
"may rely on arguments and evidence presented for the first time in a reply brief"
so long as the nonmovant has an adequate opportunity to respond.  Vais Arms, Inc.
v. Vais, 383 F.3d 287, 292 (5th Cir. 2004).
    Because Defendants had the opportunity to respond to the new
evidence during the February 18, 2015 hearing, the Court will consider the
evidence attached to Plaintiff's Reply brief.

behalf of himself and "other employees similarly situated."  29 U.S.C. § 216(b).

Because the FLSA requires employee-class members to affirmatively opt-in, the

plaintiff can seek "conditional class certification" from the court, which permits

the plaintiff to "send[] [a] court-approved written notice to employees, who in turn

become parties to a collective action only by filing written consent with the court."

Genesis Healthcare Corp. v. Symczk, 133 S. Ct. 1523, 1527 (2013) (citations

omitted).

        Although the Fifth Circuit has declined to adopt a specific test to

determine when a court should conditionally certify a class or grant a notice in a

§ 216(b) action, the majority of courts within the Fifth Circuit have adopted the

approach set forth in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987).

Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1216 (5th Cir. 1995) (noting

acceptable approaches include either the Lusardi approach or the "spurious class

action" approach set forth in Shushan v. Univ. of Colo., 132 F.R.D. 263 (D. Colo.

1990)), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90

(2003); Vanzzini v. Action Meat Distribs., Inc., 995 F. Supp. 2d 703, 719 (S.D.

Tex. 2014) (following Lusardi); Mateos v. Select Energy Servs., LLC, 997 F.

Supp. 2d 640, 643 (W.D. Tex. 2013) (same); Tice v. AOC Senior Home Health

Corp., 826 F. Supp. 2d 990, 994 (E.D. Tex. 2011) (same); Marshall v. Eyemasters

of Tex., Ltd., 272 F.R.D. 447, 449 (N.D. Tex. 2011) (same).

The Lusardi approach is a two-stage inquiry involving a "notice stage" and a merits or decertification stage. Mooney, 54 F.3d at 1213–14. At the notice stage, a "court determines whether the putative class members' claims are sufficiently similar to merit sending notice of the action to possible members of the class." Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 519 (5th Cir. 2010). If the court determines that the proposed class members are similarly situated and conditional certification is warranted, the plaintiff has the opportunity to send notice to potential class members, who are then permitted to opt in to the suit. Acevedo, 600 F.3d at 519.

Once plaintiffs have opted-in and discovery is largely complete, the defendant can file a decertification motion, asking the court to re-assesses whether the claimants are similarly situated. Mooney, 54 F.3d at 1214. At that point, the court can fully evaluate the merits of class certification and can choose to decertify the class. Id. This Court's current inquiry need only address the merits of the first stage of the inquiry.

## DISCUSSION

Plaintiff seeks to conditionally certify a class consisting of employees designated as plug technicians or plug hands from three years before the date of notice to the present. (Compl. at 4; Mot. at 4; Reply at 9.) Defendants make four arguments as to why conditional certification is unwarranted. First, Defendants

6

contend that Plaintiff's self-serving declarations have insufficient factual bases to support their allegations. (Resp. at 4–5.) Second, Defendants argue that, regardless, any determination as to whether there have been FLSA violations requires highly specific, individualized inquiries into whether the employee worked overtime, whether he was paid a nondiscretionary day bonus, and whether that compensation was equivalent to any overtime payment required. (Id. at 5–6.) Third, Defendants argue that there are no allegations to support collective action beyond the Midland facility. (Id. at 6–7.) Finally, Defendants argue that there is insufficient evidence that any potential plaintiffs want to join the lawsuit. (Id. at 7–9.)

Conditional certification is only proper when the class members were the victims of a single decision, policy, or plan infected by discrimination. Mooney, 54 F.3d at 1214. Accordingly, a plaintiff must generally make three showings to obtain conditional certification: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist, (2) [] those aggrieved individuals are similarly situated to the plaintiff in relevant aspects given the claims and defenses asserted, and (3) [] those individuals want to opt-in to the lawsuit." Casanova v. Gold's Tex. Holdings Grp., Inc., No. 5:13-CV-1161-DAE, 2014 WL 6606573, at *2 (W.D. Tex. Nov. 19, 2014) (quoting Walker v. Honghua Am., LLC, 870 F. Supp. 2d 462, 465–66 (S.D. Tex. 2012)).

I.      <u>Whether Aggrieved Individuals Exist</u>

        Plaintiff contends that he and the other plug technicians employed by Defendants are non-exempt employees who have been denied overtime pay in violation of the FLSA.  (Compl. at 3–4.)  Plaintiff attests that, as a plug technician with Defendants, he was never paid overtime, despite routinely working 16 to 20 hour days, six to seven days a week.  (McCloud Decl. ¶ 5.)  He also presents affidavits from two fellow plug technicians who attest that they also worked a significant amount of overtime without receiving overtime compensation.  (Brewer Decl.," Mot., Ex. 3 ¶ 6 ("I often worked 16 to 18 hours per day, sometimes working 7 days per week.  When I was the only plug hand assigned to a particular drilling location, it was not uncommon to work 24 hours, sometimes even longer, without rest"); "Rios Decl.," Mot., Ex. 2 ¶ 5 ("My day usually started between 4:00 and 5:00 a.m. and lasted until 10:00 or 12:00 p.m.  On certain jobs, it was not uncommon to work more than 24 hours straight.  I usually worked six days per week, but sometimes worked seven").  In their affidavits, all three attest that the other plug technicians that worked for Defendants were subject to the same pay structure and were similarly denied overtime.  ("McCloud Decl. 2," Reply, Ex. A-1 ¶¶ 5–6; Brewer Decl. 2 ¶¶ 10–11; Rios Decl. ¶¶ 4–6.)  Finally, Plaintiff presents earning statements from himself, Rios, and Wilson, which show compensation for 80 hours during the two-week pay period, but do not show any overtime payments.

(Reply, Exs. 6–8.)

Defendants argue that the allegations in the affidavits supporting Plaintiff's contentions that all plug hands were paid under the same compensation scheme and that all plug hands worked overtime hours without receiving overtime premiums are conclusory allegations lacking factual basis.  (Id. at 4.)

At the notice stage, allegations in pleadings and affidavits are generally sufficient to support a claim for conditional certification.  Mooney, 54 F.3d at 1213–14.  However, "most courts require some factual support" for allegations presented in the complaint, either in the form of multiple affidavits with some factual basis or other supporting evidence.  Aguirre v. SBC Commc'ns, Inc., No. CIV.A. H-05-3198, 2006 WL 964554, at *6 (S.D. Tex. Apr. 11, 2006) (finding lack of a factual basis because the plaintiffs did not submit affidavit or any other evidence apart from the statements in the complaint and motion for notice); see also Huamen v. Ojos Locos Sports Cantina LLC, No. 3:13-CV-4938-B, 2014 WL 4081554, at *3–4 (N.D. Tex. Aug. 19, 2014) (noting that declarations regarding compensation and job duties "are ideal for whether the putative class members were together the victims of a single decision, policy, or plan").

Although the Fifth Circuit has not spoken definitively on the issue, most courts that have addressed the issue agree that affidavits submitted at the notice stage of class certification need not be in a form admissible at trial.  Lee v.

Metrocare Servs., 980 F. Supp. 2d 754, 760 (N.D. Tex. 2013) (citing White v. MPW Industrial Servs., Inc., 236 F.R.D. 363, 368 (E.D. Tenn. 2006)).  A holding otherwise would "defeat the purpose of the two-stage analysis," since the first stage sets a purposefully low bar that typically results in conditional class certification.  White, 236 F.R.D. at 368; Walker, 870 F. Supp. 2d at 465.

Accordingly, most courts only require that a declarant can demonstrate that the allegations in his declaration are based on personal knowledge.[5]  E.g., Lee, 980 F. Supp. 2d at 762 (listing cases); Dooling v. Bank of the W., No, 4:11-CV-00576, 2012 WL 2417591, at *4 (E.D. Tex. June 26, 2012); Lang v. DirecTV, Inc., No. 10-1085 "G"(1), 2011 WL 5934607, at *9 (E.D. La. Dec. 30, 2011).  "Personal knowledge can include inferences and opinions, so long as they are grounded in personal observation and experience."  United States v.

---

[5] Defendants argue that the declarations here are "indistinguishable" from those in Stiles v. FFE Transp. Servs., Inc., No. 3:09-CV-1535-B, 2010 WL 935469 (N.D. Tex. Mar. 15, 2010).  There, the court found that allegations had insufficient factual basis when they merely stated, "From my experience and conversations with other employees of FFE, I know that my colleagues located in Lancaster, Texas often worked in excess of 40 hours per week and were subject to the same compensation policies and procedures."  Id. at *3.  The court finds this reasoning unpersuasive in light of precedent out of various other courts, which hold that interaction with fellow employees can be sufficient to establish personal knowledge.  E.g., Lang v. DirecTV, Inc., No. 10-1085 "G"(1), 2011 WL 5934607, at *9 (E.D. La. Decl. 30, 2011) (noting that "declarants can have personal knowledge about others by virtue of their job duties"); Villareal v. St. Luke's Episcopal Hosp., 751 F. Supp. 2d 902, 912 (S.D. Tex. 2010) (finding that the affiant's interactions and conversations with and observations of was sufficient to show personal knowledge about coworkers' overtime hours, schedules, and work responsibilities).

Cantu, 167 F.3d 198, 204 (5th Cir. 1999) (internal quotation marks omitted).

       In support of the compensation scheme allegations, McCloud attests that he knows that the pay structure was uniform for all plug technicians because of conversations he had with company management, in addition to conversations with other plug technicians.  (McCloud Decl. 2 ¶ 5.)  Additionally, he attests that in summer 2012, Defendants announced that they were reducing salaries by 10% and reducing nondiscretionary day bonuses, which caused a great deal of discussion about Defendants' compensation practices among plug technicians.  (Id. ¶ 6.)  This is sufficient to show personal knowledge regarding compensation practices. Brewer attests to the same reasons for knowledge about the compensation scheme, which is similarly sufficient to show personal knowledge.  (Brewer Decl. 2 ¶ 10.) Because Rios does not provide any reason for his knowledge regarding the compensation scheme in general, his testimony has insufficient factual basis to support the allegation.

       In support of the fact that plug technicians worked overtime, McCloud attests that he worked overtime with other plug technicians.  (McCloud Decl. 2 ¶ 5.)  Specifically, he states that "two plug hands were sometimes assigned to the same job.  In order to meet the requirements that a plug hand be on site 24 hours per day, the two plug hands would alternate working 12-hour shifts.  When one was not working, the other was, and both worked substantial overtime hours." (Id.)

This is sufficient to establish personal knowledge.[6]  Brewer attests that he worked with and personally witnessed other plug hands working overtime and that working overtime "was the norm," regardless of the location that he was in.  (Brewer Decl. 2 ¶ 9.)  Again, this is sufficient to establish personal knowledge.  Because Rios does not provide any reason for his knowledge regarding other employees' overtime, his testimony has insufficient factual basis to support the allegation.

In sum, Plaintiff presents the following competent evidence to credit his claims that aggrieved individuals exist: his own personal testimony about his salary, hours, and lack of overtime pay; the testimony of Brewer and Rios regarding the same; his and Brewer's testimony that working overtime hours without receiving overtime compensation is a regular practice at the Midland and Searcy, Arkansas locations; and paychecks corroborating the alleged compensation scheme.  Given the lenient standard at the conditional certification phase, this evidence is sufficient to credit the allegations that Defendants failed to appropriately compensate Plaintiff and plug technicians as required by the FLSA.

---

[6] This evidence is distinguishable from that in <u>Clark v. City of Ft. Worth</u>, 800 F. Supp. 2d 776, 780–81 (N.D. Tex. 2011), which Defendants cite in support of their argument that the affidavits lack sufficient factual basis.  In <u>Clark</u>, the court found that the allegations in the supporting affidavits regarding overtime lacked factual basis because they did not allege any personal experience that would provide them knowledge about other officers' overtime pay.  Here, the fact that the declarants worked the overtime hours together with other plug technicians is sufficient to establish a factual basis.

II.      <u>Whether the Aggrieved Individuals Were Similarly Situated</u>

"The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated."  <u>Maynor v. Dow Chem. Co.</u>, No. CIV. A. G-07-0504, 2008 WL 2220394, at *7 (S.D. Tex. May 28, 2008).  Instead, the plaintiff must show that the employees have substantially similar job requirements and are subject to the same common compensation scheme.  <u>Huaman</u>, 2014 WL 4081554, at *4.  The purpose of the similarly situated requirement is to ensure that collective action will promote the economy of scale that the FLSA envisions.  <u>Maynor</u>, 2008 WL 2220394, at *7.

Plaintiff addresses the similarly situated requirement with two separate categories of evidence.  To show that the plug technicians have substantially similar job requirements, Plaintiff presents a job description for the plug technician position with Defendants, as well as sworn testimony from himself and two other plug technicians about their personal job duties and the job duties of the other plug technicians at the company.  To show that the plug technicians were subject to the same compensation scheme, Plaintiff presents paychecks from himself and two fellow plug technicians that show payment for an eighty hour week and the bonus, as well as sworn testimony from himself and two other plug technicians about the compensation scheme that they and other plug technicians were subject to.

13

In response, Defendants challenge the sufficiency of the evidence regarding the job duties, the similarity of the compensation scheme, and the similarity of the job locations.  The Court addresses each argument in turn.

A.     Similarity of Job Duties

In support of the job duties allegations, McCloud attests that he was trained by three plug technicians, he trained new plug technicians, and, while working as a shop foreman, he communicated regularly with other plug technicians about their jobs.  (McCloud Decl. 2 ¶ 3.)  To the extent that the statements are limited to the job sites he has worked at, there is sufficient factual basis to demonstrate that he has personal knowledge about the duties of a plug technician. Brewer attests that he worked with at least seven plug technicians in Arkansas and two plug technicians in Texas, in addition to training several plug technicians. (Brewer Decl. 2 ¶¶ 4–7.)  Likewise, this is sufficient factual basis to demonstrate that he has personal knowledge about the duties of a plug technician in Arkansas and Texas.  Rios attests that his work with other plug technicians is the basis for his knowledge about the job duties.  (Rios Decl. ¶ 6.)  This is sufficient to show personal knowledge in the locations that Rios worked.  Based on the testimony alone, there is sufficient basis to concluded that plug technicians have sufficiently similar job duties.

Moreover, even if the Court were not to credit the testimony provided

14

regarding the job duties of Defendants' plug technicians, Plaintiff has presented a job description for a plug technician produced by Jaycar, which matches the job duties each affiant attests that he personally performed.  (Reply, Ex. 3.) Accordingly, there is sufficient evidence to demonstrate that plug technicians working for Defendants have substantially similar job duties.

B.     Similarity of the Compensation Scheme

Defendants contend that there are no common facts regarding the compensation scheme because any determination as to whether the plug technicians were properly compensated requires highly specific, individualized inquiry into whether each employee worked overtime, whether he was paid a nondiscretionary day bonus, and whether that compensation was equivalent to any overtime payment required.  (Resp. at 5–6.)  Plaintiff counters that the issues that Defendants highlight as "individualized inquiries" speak only to the ultimate amount of damages each employee is owed, not whether their claims are cognizable as a collective action.  (Reply at 4–5.)

At the outset, the Court notes that nondiscretionary bonus payments are part of an employee's regular compensation rate, which is used to calculate the rate of overtime that must be paid.  29 C.F.R. § 778.208; see also id. § 778.211 (noting that, once an employer promises in advance to pay a bonus or has set-out a fixed compensation scheme, such as allocating one cent for each item sold, a bonus

15

becomes nondiscretionary and part of the employee's regular compensation rate).
Plaintiff has presented competent testimony from three employees that their bonus
payments were nondiscretionary, as well as competent testimony from two
employees that the plug technicians in Midland and Arkansas were subject to the
same compensation scheme.  Accordingly, Plaintiff has presented sufficient
evidence, for conditional certification purposes, that the bonus payments were
nondiscretionary.  As such, the calculations that Defendants argue would require
too individualized an inquiry are unnecessary; the mere fact that the parties were
not paid overtime is sufficient to establish an FLSA claim regardless of the
nondiscretionary bonus.

    Even if the Court were to assume that the bonuses were discretionary,
and therefore outside the scope of the regular pay rate, the allegations and
affidavits presented are sufficient to establish a common compensation policy.
According to the evidence presented, Plaintiff and his fellow plug technicians in
the Midland and Arkansas locations receive a salary and bonus, but are not paid
overtime for the hours that they work beyond a normal workday or workweek.
Even if the bonus equated to overtime in certain cases, the allegations that there
was an illegal company-wide policy denying overtime to plug technicians would
still stand.  See White v. NTC Transp., Inc., No. 4:11-CV-007-SA-JMV, 2013 WL
5874566, at *4–5 (N.D. Miss. Oct. 31, 2013) ("Here, Plaintiffs allege violations

caused by a specific company-wide policy.  That some dispatchers may not have followed the downtime policy in some instances does not prevent the issue of liability from being determined collectively"); <u>Lee v. Veolia ES Indus. Servs., Inc.</u>, No. 1:12-CV-136, 2013 WL 2298216, at *13 (E.D. Tex. May 23, 2013) (noting that "the fact that individualized proof may be necessary to determine unpaid hours does not preclude conditional certification"); <u>Akins v. Worley Catastrophe Response, LLC</u>, No. CIV. A. 12-2401, 2013 WL 1412371, at *6–7 (E.D. La. Apr. 8, 2013) ("Despite some individual variations in the daily rate of pay and/or job duties, plaintiffs have made substantial allegations that Worley had a single policy, applicable to all claims evaluators who routinely worked more than 40 hours per week . . . . The potential for individualized amounts of back pay owed to each class member does not defeat the appropriateness of conditional certification"); <u>Gibson v. NCRC, Inc.</u>, No. CIV. A. H-10-1409, 2011 WL 2837506, at *5 (S.D. Tex. July 18, 2011) (rejecting the argument that whether a particular employee was entitled to overtime in a given workweek and the amount required individual certification and barred conditional certification); <u>Abanil v. Coast 2 Coast, Inc.</u>, No. CIV. A. H-08-486, 2008 WL 4937565, at *6 (S.D. Tex. Nov. 17, 2008) (holding that "the fact that different chippers worked different amounts of overtime hours [does not] preclude a determination that the group as a whole is similarly situated with regard to defendants' universal refusal to pay them overtime").  Accordingly, there is

17

sufficient evidence that plug technicians were subject to a common compensation scheme.

      C.      <u>Similarity of the Geographic Location</u>

         Defendants next contend that Plaintiff's allegations do not support company-wide notice because they address its Midland facility alone.  (Resp. at 6–7.)  Plaintiff counters that Defendants' argument rests on a false premise that plug technicians work at a facility maintained by Defendants; instead, Plaintiff argues that plug technicians perform their work at drilling locations operated by Defendants' customers.  (Reply at 5.)  Plaintiff argues that at each site, plug technicians perform the same job in the same way under the same compensation scheme, and that all plug technicians were managed and dispatched from the Midland headquarters.  (<u>Id.</u> at 6.)

         "FLSA violations at one of a company's multiple locations generally are not, without more, sufficient to support company-wide notice."  <u>Rueda v. Tecon Servs., Inc.</u>, No. CIV. A. H-10-4937, 2011 WL 2566072, at *4–6 (S.D. Tex. June 28, 2011); <u>accord</u> <u>Huamen</u>, 2014 WL 4081554, at *6; <u>England v. New Century Fin. Corp.</u>, 370 F. Supp. 2d 504, 511 (M.D. La. 2005).  However, "geographic commonality is not necessary to satisfy the FLSA collective action's 'similarly situated' requirement," so long as the employees were impacted by a common policy.  <u>Vargas v. Richardson Trident Co.</u>, No. H-09-1674, 2010 WL

370155, at *8 (S.D. Tex. Feb. 22, 2010) (internal quotation marks omitted); accord Prejean v. O'Brien's Response Mgmt., Inc., Nos. 12-11045, 12-1716, 12-1533, 2013 WL 5960674, at *7 (E.D. La. Nov. 6, 2013).  Accordingly, "[i]f there is reasonable basis to conclude that the same policy applies to multiple locations of a single company, certification is appropriate."  Rueda, 2011 WL 2566072, at *4.

Plaintiff offers affidavits from three employees, including himself, in support of company-wide certification.  First, he attests that, as shop foreman from May 2014 to September 2014, it was his responsibility to make sure frac plugs were picked up or shipped to plug technicians.  (McCloud Decl. 2 ¶ 2.) Accordingly, he attests that, during his employment, Defendants dispatched plug technicians out of both Midland, Texas and Searcy, Arkansas.  (Id.)  Although he does not submit any testimony about the location he was dispatched out of as a plug technician, it is undisputed that he worked out of the Midland facility.  (Resp. at 7.)  Second, Brewer attests that from 2009 to late 2012 or early 2013, he was dispatched from both Searcy and Midland.  (Brewer Decl. 2 ¶ 3.)  He attests that beginning in late 2012 or early 2013, he and the rest of the Searcy plug technicians were dispatched from Midland.[7]  Third, Rios attests as to his work as a plug

---

[7] Brewer also attests that "to the best of [his] knowledge, all plug hands who worked for McClinton" also began being dispatched from the Midland location in late 2012 or early 2013.  This allegation is insufficient to establish personal knowledge.  Bolen v. Dengel, 340 F.3d 300, 313 (5th Cir. 2003) (reminding that statements made on information and belief are not based on personal knowledge).

technician.  (Rios Decl. ¶ 2.)  Although he does not identify the facility from which he was dispatched, it is undisputed that he worked at the Midland facility.  (Resp. at 7.)

Three affidavits attesting to identical compensation schemes at the Midland and Searcy facilities is sufficient evidence for conditional certification of employees who were dispatched from those facilities.  However, Plaintiff has failed to produce any evidence that a comprehensive, company-wide compensation exists beyond these two facilities.  Accordingly, the class of similarly situated individuals is limited to plug technicians dispatched out of Midland or Searcy.

III.    Whether There is Evidence That Similarly Situated Aggrieved Individuals Will Join the Suit

In addition to requiring the existence of similarly situated individuals, most courts require that the Plaintiff present some evidence that those individuals are likely to opt-in to the lawsuit.  See Casanova, Inc., 2014 WL 6606573, at *2 (quoting Walker, 870 F. Supp. 2d at 465–66); Carey v. 24 Hour Fitness USA, Inc., No. CIV. A. H-10-3009, 2012 WL 4857562, at *3 (S.D. Tex. Oct. 11, 2012) ("[T]ypically a showing is necessary that at least a few similarly situated individuals seek to join the lawsuit; Lentz v. Spanky's Rest. II, Inc., 491 F. Supp. 2d 663, 669 (N.D. Tex. 2007) (finding it problematic that the plaintiff could only identify one other potential plaintiff).

Here, four plug technicians besides Plaintiff have already chosen to

voluntarily opt-in: Robert Rios, Matthew Wilson, Chad Manning, and Jerry Brewer.  (Compl., Ex. 3; Dkt. # 6, Ex. 1; Dkt. # 12, Ex. 1; Dkt. # 15, Ex. 1.)  In addition, Rios identifies one plug technician that he believes is interested in opting in, Brewer identifies four plug technicians that he believes are interested in opting in, and McCloud identifies three additional plug technicians that he believes are interested in opting in.  (Rios Decl. ¶ 7; Brewer Decl. 2 ¶ 11; McCloud Decl. 2 ¶ 7.)  Separately, McCloud also identifies at least fifteen other plug technicians that he knows worked for Defendants.  (McCloud Decl. 2 ¶ 7.)  Although the affiants attest that some potential plaintiffs are hesitant to opt-in out of fear of retaliation, such fears should not affect the Court's assessment of the likelihood of opt-in here, since the opt-in notice should address the retaliation concern.

Together, this is sufficient evidence to justify putting the employer through "the expense and effort of notice to a conditionally certified class of claimants."  See Carey, 2012 WL 4857562, at *3; see also Casanova, Jones v. JGC Dall. LLC, No. 3:11-CV-2743-O, 2012 WL 6928101, at *3 (N.D. Tex. Nov. 29, 2012) (finding sufficient testimony that the plaintiffs knew of many dancers who were interested in joining the lawsuit), report and recommendation adopted, 2013 WL 271665 (N.D. Tex. Jan. 23, 2013).

Because Plaintiff has demonstrated a basis for conditional certification, the Court **GRANTS IN PART** his Motion for Conditional Class

Certification, insofar as the proper class for certification is:

> All persons employed by McClinton Energy Group, L.L.C. and Jaycar
> Energy Group, L.L.C. d/b/a Jaycar Frac Plugs as plug technicians or
> "plug hands" dispatched out of the <u>Midland, Texas</u> or <u>Searcy,
> Arkansas yards</u> from [insert 3 years prior to date notice is sent],
> through [insert date notice is sent].

IV.    <u>Plaintiff's Proposed Notice to the Potential Class</u>

        Finally, Plaintiff seeks approval of a proposed notice setting out the

scope of the litigation and the opt-in procedure, as well as a proposed consent to

join form that potential plaintiffs can use to opt-in to the litigation.  (Mot. at 6.)

Defendants object to Plaintiff's proposed notice on five grounds: (1) that the notice

should only be sent to those employed within three years of the date the notice is

sent, not the date that the suit was filed; (2) that the notice does not inform

potential plaintiffs that they may obtain their own counsel; (3) that the notice does

not contain the contact information for Jaycar's counsel; (4) that the notice should

provide a 45 day opt-in period, rather than a 90 day opt-in period; and (5) that the

notice[8] places an additional burden on the potential plaintiff to request a copy of

the fee agreement with The Young Law Firm, while binding the potential plaintiff

to that agreement.  (Resp. at 10.)

        In response, Plaintiff has agreed to modify the Notice to address three

---

[8] The Court agrees with Plaintiff that this objection presumably refers to the
"Consent to Join," since the notice contains no information regarding a fee
agreement.  Plaintiff has revised the Consent to Join form to address Defendants'
objection.

of the five points.  However, Plaintiff maintains that (1) it is inappropriate for the notice to contain the contact information for Jaycar's counsel; and (2) he will agree to a 60-day opt-in period instead of a 90-day opt-in period.  (Id.)

A.    Inclusion of Defense Counsel Contact Information

Defendants cite no authority in support of their position that the notice should include contact information for defense counsel.  "Plaintiffs' counsel is typically responsible for distributing notice in a collective action, and courts have expressed reservations on ethical grounds about post-certification communications between defendant's counsel and potential opt-in class members."  Behnken v. Luminant Min. Co., LLC, 997 F. Supp. 2d 511, 525 (N.D. Tex. 2014) (citing Harris v. Vector Mktg. Corp., 716 F. Supp. 2d 835, 847 (N.D. Cal. 2010)).  Especially given the potential opt-in plaintiffs' concerns about retaliation for participating in the suit, the Court finds inclusion of defense counsel's contact information on the notice unwarranted.

B.    Length of Opt-in Period

Again, Defendants cite no authority in support of the proposed 45-day opt-in period.  Although opt-in periods commonly range from as little as 30 to as many as 120 days, most courts appear to default to a notice period of 60 days, unless potential plaintiffs are difficult to contact because of their locations or other extenuating factors warrant additional time.  E.g., Lima v. Int'l Catastrophe

23

Solutions, Inc., 493 F. Supp. 2d 793, 804 (E.D. La. 2007); Camp v. Progressive

Corp., No. CIV. A. 01-2680, 2002 WL 31496661, at *7 (E.D. La. Nov. 8, 2002)

(granting 120 day opt-in period); Heeg v. Adams Harris, Inc., 907 F. Supp. 2d 856,

865 (S.D. Tex. 2012) (granting request for 60 day opt-in period); Sims v. Housing

Auth. City of El Paso, No. EP-10-CV-109-KC, 2010 WL 2900429, at *5 (W.D.

Tex. July 19, 2010) (finding 60 day opt-in period reasonable); Mims v. Carrier

Corp., No. 2:06-CV-206, 2008 WL 906335, at *1 (E.D. Tex. Mar. 31, 2008)

(granting 60 day opt-in period).

　　　　In this case, potential plaintiffs may be somewhat difficult to reach, as

they are not always dispatched from the Midland yard and they conduct the bulk of

their work offsite at Defendants' job sites.  Accordingly, the Court finds a 60 day

opt-in period reasonable.

## CONCLUSION

　　　　For the foregoing reasons, the Court **GRANTS IN PART** Plaintiff's

Motion for Conditional Certification and Notice to Potential Class Members (Dkt.

# 17).

　　　　**IT IS SO ORDERED**.

　　　　**DATED**: Midland, Texas, February 20, 2015.

_____

David Alan Ezra
Senior United States Distict Judge